[Cite as *State v. Huffman*, 2018-Ohio-1192.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 105805**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## SAVONTE D. HUFFMAN

DEFENDANT-APPELLANT

---

## JUDGMENT:
SENTENCE VACATED; REMANDED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-605264-A

**BEFORE:** S. Gallagher, J., McCormack, P.J., and Boyle, J.

**RELEASED AND JOURNALIZED:** March 29, 2018

**ATTORNEY FOR APPELLANT**

Allison S. Breneman
1220 West 6th Street, Suite 303
Cleveland, Ohio   44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
By:    Mahmoud S. Awadallah
            Anthony Thomas Miranda
Assistant Prosecuting Attorneys
Justice Center - 9th Floor
1200 Ontario Street
Cleveland, Ohio    44113

SEAN C. GALLAGHER, J.:

**{¶1}** Appellant Savonte D. Huffman appeals from the sentence imposed in Cuyahoga C.P. No. CR-16-605264-A. Upon review, we vacate the sentence and remand the case to the trial court to resentence appellant under the plea agreement or to allow appellant to withdraw his guilty plea.

**{¶2}** Appellant was charged under a nine-count indictment in Cuyahoga C.P. No. CR-16-605264-A, an aggravated murder case. On March 14, 2017, the state and appellant reached a plea agreement pursuant to which appellant would plead guilty to Count 1, aggravated murder in violation of R.C. 2903.01(A), with a three-year firearm specification. All remaining counts were nolled. While placing the plea on the record, the prosecutor stated the following:

> There is also an additional plea condition that the agreed sentencing range would be from 23 to life to 33 years to life, and that the defendant will forfeit all items seized in this matter. We believe that if this plea is forthcoming, we ask that the remaining counts in this case number be dismissed or nolled. I believe the plea will be forthcoming.

**{¶3}** The court proceeded to inquire about a separate case, Cuyahoga C.P. No. CR-16-611587-B, an aggravated robbery case. The prosecutor indicated he was not the prosecutor on that case and then represented that the sentence would merge and there would be no additional time, stating the following:

> [T]he state of Ohio would also accept a plea of guilty to that indictment, and the sentence would merge with the sentencing in the aggravated murder; there will be no additional time for that case. It will just be on the aggravated murder count.

**{¶4}** After a brief recess, which permitted the prosecutor to contact his supervisor, the state placed on the record the plea offer in Cuyahoga C.P. No. CR-16-611587-B, pursuant to which appellant would plead guilty to two counts of aggravated robbery and one count of receiving stolen property. With regard to the sentence, the prosecutor again represented there would be no additional time on the case, stating as follows:

> It's also the State's recommendation that Case [No. CR-16-611587-B] be run concurrent with the sentence in Case [No. CR-16-605264-A]. So there would be no additional time on [Case No. CR-16-611587-B].

**{¶5}** The parties then negotiated the firearm specifications in the aggravated robbery case. The prosecutor again represented to the court that "whatever sentence [is imposed] would run concurrent with * * * the homicide case, so there would be no additional time." Defense counsel expressed that he "appreciate[d] the attempts of the state at the last minute to guarantee that [the defendant] doesn't do any additional time." It was then agreed that case No. CR-16-611587-B would be amended to remove the one- and three-year gun specifications to make sure the defendant would not serve any additional time. Defense counsel expressed that "[w]ith those amendments, we believe the plea is forthcoming." Defense counsel then indicated the following on the record:

> We would ask that Case [No. CR-16-611587-B] be run concurrent with Case [No. CR-16-605264-A], a sentence of 23 to life through 33 to life. We believe that plea will be forthcoming at this time.

{¶6} Defense counsel indicated that he had "counseled [defendant] as to the rights he's giving up by not going to trial; he understands the benefit." The trial court conducted a thorough plea colloquy with appellant. The court reviewed the possible sentences that appellant faced in each case, and appellant indicated that he understood and that no other promises had been made other than what was stated on the record. After appellant entered a plea of guilty to the offenses, the trial court found that the pleas had been knowingly, voluntarily, and intelligently entered with full understanding of his constitutional and trial rights. Both counsel agreed that they were satisfied with Crim.R. 11 compliance. The trial court's journal entry indicated that "CASE [No.] CR-[16-]611587[-B] IS TO BE CONCURRENT TO CASE [No.] CR-[16-]605264[-A]."

{¶7} A sentencing hearing was held on April 19, 2017. The state played a video of appellant shooting the victim in the aggravated murder case. Appellant walked up and shot the victim, who was exiting a convenience store, while the victim's five-year-old daughter was waiting for him in the car. Appellant took responsibility for his actions. Several family members spoke at the sentencing hearing. As characterized by the state, appellant "hunted down [the victim], approached him from the rear and executed him."

{¶8} In case No. CR-16-605264-A, the trial court sentenced appellant to a prison term of 30 years to life, plus three years for the firearm specification, for a total of 33 years to life. The trial court's journal entry filed April 25, 2017, indicates that the sentence is "consecutive to any other sentence" and also includes consecutive sentence findings.

**{¶9}** In case No. CR-16-611587-B, the trial court sentenced appellant to a prison term of 11 years on each of the two aggravated robbery counts and 12 months on the receiving stolen property count. The trial court ordered the sentences to run consecutively. The court made the requisite findings for imposing consecutive sentences on the record and incorporated its consecutive-sentence findings into the sentencing journal entry. Further, the court indicated it was not going to take "the recommendation" for the sentence in case No. CR-16-611587-B to run concurrent with the sentence in case No. CR-16-605264-A. The court expressed the following on the record:

> This Court finds that it had the opportunity to review the video. The Court finds the harshness and the viciousness of the video indicated that [defendant] is a continuing threat to society.
>
> The Court believes that his conduct at this time was brutal and senseless, and made no sense in terms of other people being around. That he endangered everybody who was there and the Court believes that he should never be in society again.

In its journal entry in case No. CR-16-611587-B, the court ordered the sentences therein to run "CONSECUTIVELY AND CONSECUTIVE TO CASE [No.] CR-[16-]605264[-A]."

**{¶10}** Appellant timely filed an appeal in case No. CR-16-605264-A. Appellant's sole assignment of error challenges the trial court's imposition of consecutive sentences.

**{¶11}** Initially, we must recognize that no appeal has been taken in Cuyahoga C.P. No. CR-16-611587-B, the aggravated robbery case, wherein the court ordered the

sentence to run consecutive to the sentence imposed in this case.[1] The trial court held a joint sentencing hearing in the two cases. Because case No. CR-16-611587-B is not before us, we cannot address any challenge to the imposition of consecutive sentences in that case. *See State v. Tate*, 8th Dist. Cuyahoga Nos. 102776 and 102777, 2015-Ohio-5260, ¶ 2; *State v. Nordstrom*, 8th Dist. Cuyahoga No. 101656, 2015-Ohio-1453, ¶ 28.

{¶12} Nevertheless, the trial court's journal entry in case No. CR-16-605264-A, the aggravated murder case, also includes the imposition of consecutive sentences, which appellant argues was contrary to the felony sentencing guidelines and to his understanding that the sentence would run concurrent. Appellant maintains that his plea was not entered knowingly because the trial court did not inform him that it could reject the imposition of concurrent sentences.

{¶13} The dialogue at the plea hearing reflects that the prosecutor repeatedly represented a plea offer for an agreed sentencing range with the imposition of a concurrent sentence for the aggravated robbery case, resulting in no additional time. Under these terms, defense counsel acknowledged his belief that a plea would be forthcoming. From our review, it is apparent that appellant entered his plea with an agreed understanding that concurrent sentences would be imposed. The trial court's journal entry from the plea hearing reflected its acceptance of the plea agreement that

---

[1] Nothing herein precludes appellant from filing a motion with the trial court in case No. CR-16-611587-B or seeking leave to file a delayed appeal with this court.

concurrent sentences would be imposed. However, upon seeing the video of the aggravated murder at sentencing, the trial court imposed a consecutive sentence. The trial court included the imposition of a consecutive sentence in the journal entry in case No. CR-16-605264-A, which is the case before us.

{¶14} In examining the transcript and the record before us, we must stress the importance that the parties pay attention to the terms and phrases used when placing agreements on the record. Terms like "agreed sentence" and "recommendation" used in this case can be subject to different interpretations unless clarity is achieved.

{¶15} In this instance, the prosecutor handling the aggravated murder case was suddenly confronted with the recognition that an unresolved aggravated robbery case that he was not handling was also pending. In an effort to reach a global solution of both files and not disturb the agreement reached on the aggravated murder case, the firearm specifications were removed from the aggravated robbery case so both could be resolved under the parameters of the agreement in the aggravated murder case. The problem with this resolution was that the prosecutor was representing that these cases would "merge," despite the fact that these were separate cases, involved different crimes, were committed on different dates, and involved different victims. Further, after representing that the parties had reached an agreed sentence at the time of the plea and no further jail time would be involved, at sentencing the prosecutor began referencing the agreed sentence involving the aggravated robbery case as a recommendation. These terms are not synonymous.

**{¶16}** Because many cases are resolved by plea agreements, the language of the agreement and what the agreement encompasses are critical. It is important that the record is clear and the understanding of everyone involved is attained. In most instances, a plea agreement will result in a plea to certain offenses or cases in exchange for the dismissal of other offenses or cases. Sentencing is then left to the discretion of the trial judge. In other cases, the plea includes a nonbinding recommendation from the prosecutor or a joint nonbinding recommendation from both the prosecutor and defense counsel about sentencing to the trial court. It is well settled that a trial court judge is not required to accept or even comment on that recommendation as long as the court has indicated that no promises, threats, or coercion has been used to induce the plea and that understanding is placed on the record and acknowledged by the defendant.

**{¶17}** The representation of an agreed sentence however creates a different scenario. Implicit in the agreed sentence is an understanding that in exchange for the plea, the defendant and the state have agreed to be mutually bound to a specific sentence or a sentence authorized by law within a prescribed range. Agreed sentences are distinct from recommended sentences in two key aspects. First, an agreed sentence authorized by law is not appealable. R.C. 2953.08(D)(1) expressly deems such sentences as nonappealable. Appellate courts are precluded from reviewing them. Second, inherent in an agreed sentence is a quid pro quo arrangement where the defendant and prosecutor have either given up something or attained something in exchange for being bound by a nonappealable sentence.

**{¶18}** In these circumstances, the trial court remains free to reject the agreement, but since the plea is inherently intertwined with the agreed sentence, the court must express its acceptance or rejection of the agreement for it to be clear the plea is knowingly, voluntarily, and intelligently made. In this instance, the court expressed no opinion on the record, but did convey acceptance of the agreed sentence in the journal entry of the plea.

**{¶19}** Agreed sentences serve an important function in Ohio's justice system. For defendants, they are an effective tool to "cap" or limit sentencing exposure. This is especially true where the defendant is facing significant jail time either due to the severity of the individual offense or the sheer volume of offenses. In these instances, the defendant is giving up the right of appeal to be secure in the knowledge that he or she will not be subject to a greater punishment than the agreed sentence. For prosecutors, an agreed sentence secures a plea to perhaps a difficult or uncomfortable case in exchange for an understanding that a sentence will be to a level or range that the prosecutor deems satisfies the victim or society as a whole. Such arrangements do not restrict a trial court's discretion to reject plea agreements, nor do they bind a trial court to a jointly recommended sentence. *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 28.

**{¶20}** With regard to an agreed sentence that forms the basis of the plea, the sentence itself is part of the quid pro quo for the agreed plea. Although the trial judge is free to accept or reject that agreement, it is incumbent upon the court to do so expressly.

To hold otherwise creates a false expectation in the mind of the defendant over the underlying nature of the plea agreement.

{¶21} Moreover, due process requires the trial court to put the defendant on notice of the possibility that it could impose a longer prison term than negotiated under a plea agreement before accepting a guilty plea. *State v. Williams*, 8th Dist. Cuyahoga No. 105025, 2017-Ohio-2662, ¶ 4; *see also State v. Allgood*, 9th Dist. Lorain Nos. 90CA004903, 90CA004905, and 90CA004907, 1991 Ohio App. LEXIS 2972 (June 19, 1991) (judgment reversed where court imposed consecutive sentences in contravention of the plea agreement that provided the sentences were to run concurrently when the court did not follow the accepted plea agreement and failed to advise the defendant of the potential for consecutive sentences at the plea hearing or to allow him to withdraw his plea).

{¶22} Accordingly, the proper remedy is to remand this case to the trial court to resentence appellant under the plea agreement or to allow appellant to withdraw his guilty plea. *See Williams* at ¶ 5; *Allgood* at ¶ 11.

{¶23} Sentence vacated; case remanded for further proceedings consistent with this opinion.

It is ordered that appellant recover from appellee costs herein taxed.     The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, JUDGE

TIM McCORMACK, P.J., and
MARY J. BOYLE, J., CONCUR