[Cite as *State v. Elliott*, 2021-Ohio-424.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-190430 |
| | | TRIAL NO. B-1806579 |
| Plaintiff-Appellee, | : | |
| | : | |
| vs. | | |
| | : | *O P I N I O N.* |
| DAMARCO ELLIOTT, | : | |
| Defendant-Appellant. | : | |


Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  February 17, 2021


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Scott M. Heenan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*John Hill, Jr.,* for Defendant-Appellant.

**BERGERON, Presiding Judge.**

{¶1} We confront in this case a so-called "agreed sentence" in a deal struck between a defendant and the state. The problem, as we shall see, is that an "agreed sentence" conjures up a variety of meanings both in the case law and, in all likelihood, in the mind of a defendant. To attempt to clarify the confusion in this area, we elaborate on the effect of an agreed sentence so that the defense, the state, and the trial court are all on the same page. In this case, while the deal was labeled as an "agreed sentence," the court explained to the defendant that it was not obliged to accept the proposed sentence, and could deviate in either direction. The defendant acknowledged that at the time of his plea, preventing him from now unwinding his plea after the trial court took the very actions that it warned him about. We therefore overrule both assignments of error and affirm the judgment of the trial court.

I.

{¶2} Defendant-appellant Demarco Elliott was indicted on nine drug-related charges. Rather than go to trial, Mr. Elliott negotiated a plea agreement with the state: he agreed to plead guilty to three charges in exchange for the state dropping the six remaining counts. The agreement also contained a negotiated sentence of four years. Even though the trial court accepted the plea agreement and Mr. Elliott's guilty plea, it nonetheless deviated from the negotiated sentence, imposing five years' imprisonment instead. Frustrated that the court declined to honor the deal struck with the state, Mr. Elliott now brings two assignments of error, arguing that both the sentence and the underlying conviction should be reversed because he misunderstood the nature of his plea agreement.

### II.

{¶3}　In his first assignment of error, Mr. Elliott insists that he did not knowingly and voluntarily enter his plea because the trial court did not expressly say it *would* reject the negotiated sentence—only that it *could*.　After reviewing the record, we conclude that the trial court provided the very type of disclosure necessary to satisfy due process and the hallmarks of a voluntary plea, and we overrule this assignment of error.　However, to help clear up some uncertainty lingering in the case law, we endeavor to provide parties—and courts—with a roadmap for analyzing "agreed" sentences.

### A.

{¶4}　" 'Whatever might be the situation in an ideal world, the fact is that the guilty plea and the often concomitant plea bargain are important components of [our] criminal justice system.' " *State v. Dunbar*, 8th Dist. Cuyahoga No. 89896, 2008-Ohio-2033, ¶ 28, quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 361, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978). The Ohio Supreme Court has similarly explained that "plea agreements are a necessary and desirable part of the administration of criminal justice * * * ." *State v. Zima*, 102 Ohio St.3d 61, 2004-Ohio-1807, 806 N.E.2d 542, ¶ 11.　For good or ill, plea agreements are so pervasive that one Ohio court described them as "the lubrication which allows the criminal justice system to run smoothly."　(Citation omitted.)　*State v. Williams*, 104 Ohio Misc.2d 27, 32, 728 N.E.2d 50 (M.C.1999).

{¶5}　But the ubiquity of plea bargains should not obscure their impact—these agreements are life changing.　"[A] plea of guilty is more than an admission of conduct; it is a conviction." *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). And a conviction often leads to direct punishment as well as a variety of collateral sanctions. To that point, entering a guilty plea entails an obligatory waiver of constitutional rights.　The

3

accused forfeits "his privilege against compulsory self-incrimination, his right to jury trial, his right to confront his accusers, and his right of compulsory process of witnesses." *State v. Ballard*, 66 Ohio St.2d 473, 423 N.E.2d 115 (1981), paragraph one of the syllabus, citing *Boykin* at 243.

{¶6} Why would a defendant forgo such rights and ink a plea? In most instances, we presume that the defendant receives some benefit from the deal in the give and take of the plea negotiations. A defendant usually accepts some detriment (pleading guilty) in exchange for some benefit (a dropped or reduced charge, or a lower sentence). Put another way, plea agreements represent bargained-for exchanges whereby defendants limit their legal exposure and prosecutors obtain guaranteed convictions and (sometimes) non-appealable sentences. *See State v. Huffman*, 8th Dist. Cuyahoga No. 105805, 2018-Ohio-1192, ¶ 17, 19; R.C. 2953.08(D)(1) (providing that a sentence is not reviewable "if the sentence is authorized by law, has been recommended jointly by the defendant and the prosecution in the case, and is imposed by a sentencing judge").

{¶7} Precisely because of the stakes, it is well settled that plea agreements can be specifically enforced. *See Santobello v. New York*, 404 U.S. 257, 263, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) (requiring specific performance of the plea agreement or the opportunity for the defendant to withdraw his plea). When the prosecutor's agreement is " ' "part of the inducement or consideration, such promise must be fulfilled." ' " *State v. Dye*, 127 Ohio St.3d 357, 2010-Ohio-5728, 939 N.E.2d 1217, ¶ 22, quoting *State v. Thomas*, 61 N.J. 314, 323, 294 A.2d 57 (1972), quoting *Santobello* at 262; *see State v. Soto*, 158 Ohio St.3d 44, 2019-Ohio-4430, 139 N.E.3d 889, ¶ 19 ("[B]ased on principles of contract law, * * * * when a plea rests on a promise made by the prosecutor, that promise must be fulfilled."). (Internal citation omitted.)

4

{¶8} Notwithstanding these points, a plea agreement may sometimes be a futile exercise because "[p]lea agreements are generally made *between the State and a defendant.*" (Emphasis added.) *State v. Fyffe*, 2018-Ohio-112, 109 N.E.3d 51, ¶ 22 (2d Dist.). And as such, plea agreements are not inherently binding upon the trial court. *State v. Fenderson*, 6th Dist. Erie Nos. E-14-015 and E-14-021, 2015-Ohio-565, ¶ 11 ("In reviewing the enforceability of plea agreements, it is widely recognized that as a general rule plea agreements between the state and defense counsel are not binding upon the trial court, as the ultimate discretion and sentencing determination lies with the trial judge."); *State v. Darnell*, 4th Dist. Gallia No. 02CA15, 2003-Ohio-2775, ¶ 7 ("It is well accepted that the trial court has the discretion to accept or reject a plea agreement."), citing *In re Disqualification of Mitrovich*, 74 Ohio St.3d 1219, 1220, 657 N.E.2d 1333 (1990) ("[T]he final judgment on whether a plea bargain shall be accepted must rest with the trial judge."), quoting *City of Akron v. Ragsdale*, 61 Ohio App.2d 107, 109, 399 N.E.2d 119 (9th Dist.1978). "Thus, any plea agreement between the state and a defendant is implicitly conditioned on the trial court's acceptance of that agreement." *Darnell* at ¶ 7.

{¶9} Further complicating matters is that trial courts in Ohio, unlike federal courts and many courts in other states, may participate in plea negotiations. *See State v. Vari*, 7th Dist. Mahoning No. 07-MA-142, 2010-Ohio-1300, ¶ 20 ("The Federal Rules of Criminal Procedure and a number of courts in other states prohibit participation by a judge in plea bargain negotiations."); *compare State v. Byrd*, 63 Ohio St.2d 288, 293, 407 N.E.2d 1384 (1980) ("Although this court strongly discourages judge participation in plea negotiations, we do not hold that such participation per se renders a plea invalid under the Ohio and United States Constitutions."). For example, a trial court may negotiate a material term of the agreement. *See State v. Bonnell*, 12th Dist. Clermont No. CA2001-12-094, 2002-Ohio-

5882, ¶ 8–13 (affirming the trial court's participation in plea negotiation where it was involved in the discussions and promised not to impose a prison sentence). Additionally, the trial court may inject its own conditions for accepting a plea agreement. *See State v. Little*, 1st Dist. Hamilton No. C-180523, 2019-Ohio-4488, ¶ 10 ("While the payment of restitution was not part of the plea agreement as negotiated by the parties, the trial court made the payment of restitution a condition of it accepting the plea.").

{¶10} If the trial court inserts itself in plea negotiations, it probably goes without saying that it may bind itself to that agreement. *Fyffe* at ¶ 22 ("Unless the court involves itself in the plea negotiations or agrees to the terms of the agreement, the trial court is not bound by the plea agreement, and the court may determine the appropriate sentence for the charges to which the defendant has pled guilty or no contest."); *Bonnell* at ¶ 18 ("When a trial court promises a certain sentence, the promise becomes an inducement to enter a plea, and unless that sentence is given, the plea is not voluntary."); *State ex rel. Sakalosh v. Durkin*, 7th Dist. Mahoning No. 09-MA-22, 2009-Ohio-1512, ¶ 8 ("[I]t is well recognized that a trial court is free to impose a greater sentence so long as the defendant is forewarned of the applicable maximum penalties and the sentencing court was itself not a party to the agreement.").

{¶11} But even if the trial court stays on the sidelines, "once the court approves the plea agreement, its ability to deviate from it is limited." *State v. Allgood*, 9th Dist. Lorain Nos. 90CA004903, 90CA004905 and 90CA004907, 1991 WL 116269, *1 (June 19, 1991). As a general rule, if the trial court accepts the terms of the plea agreement, it is also bound to that agreement. *See State v. Patrick*, 163 Ohio App.3d 666, 2005-Ohio-5332, 839 N.E.2d 987, ¶ 26 (8th Dist.) ("While it is true that a trial court may accept or reject an agreed-upon sentence, if a defendant and his attorney reached an agreement with the prosecutor and the

trial court then accepted this agreement on the record, to impose anything other than the agreed[-]upon sentence renders it void or voidable."); *Fenderson*, 6th Dist. Erie Nos. E-14-015 and E-14-021, 2015-Ohio-565, at ¶ 12 ("[A] trial court conducted itself so as to have promised to accept the terms of the disputed plea agreement and is thereby bound by the terms of the agreement.").

{¶12} Of course, acceptance by the trial court is not an all-or-nothing proposition. The trial court has discretion to accept or a reject a plea agreement in part. *See Allgood* at *1–2 (analyzing whether trial court had accepted the plea agreement in whole or in part). Moreover, a trial court's acceptance of an agreement need not be explicit. Acceptance of a guilty plea, without more, may itself constitute acceptance of the underlying plea agreement. *See City of Warren v. Cromley*, 11th Dist. Trumbull No. 97-T-0213, 1999 WL 76756, *3 (Jan. 29, 1999) (deciding that "the trial court's silence when it was presented with the plea agreement amounted to formal acceptance of the terms of the agreement."); *Darnell*, 4th Dist. Gallia No. 02CA15, 2003-Ohio-2775, at ¶ 8 ("By accepting the defendant's guilty or no contest plea, the court accepts the underlying plea agreement."); *Allgood* at *2 (reasoning that a "court's failure to reject a plea agreement when offered or to expressly defer a decision amounts to an acceptance of the agreement").

{¶13} As this discussion probably suggests, ample room exists for a defendant to be confused on whether, and to what extent, a trial court is negotiating or accepting a plea agreement (thus binding itself). This risk of confusion stands in tension with the transcendent principle of plea submissions: a defendant must enter his plea "knowingly, intelligently, and voluntarily." *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996). And failure on any point can render the plea unconstitutional—and unenforceable— under both our federal and state constitutions. *Id.* Thus, " 'the adjudicative element

7

inherent in accepting a plea of guilty[] must be attended by safeguards to insure the defendant what is reasonably due in the circumstances.' " *State v. Carpenter*, 68 Ohio St.3d 59, 623 N.E.2d 66 (1993), quoting *Santobello*, 404 U.S. at 262, 92 S.Ct. 495, 30 L.Ed.2d 427.

## B.

{¶14} With that backdrop, we now turn to recommended and agreed sentences, a particularly thorny subject because sentencing falls entirely within the trial court's purview. *See Fenderson*, 6th Dist. Erie Nos. E-14-015 and E-14-021, 2015-Ohio-565, at ¶ 11 ("[I]t is widely recognized that as a general rule plea agreements between the state and defense counsel are not binding upon the trial court, as the ultimate discretion and sentencing determination lies with the trial judge."). Because parties typically cannot bind the court on sentences (with some limited exceptions that we've mentioned above), Ohio courts often do not draw any distinction between recommended and agreed sentences. However, Mr. Elliott's appeal hinges on this dichotomy, insisting that he did not receive due process precisely because he negotiated an "agreed" sentence, instead of a "recommended" sentence. More specifically, Mr. Elliott maintains that because the plea contained an "agreed" sentence, the trial court's failure to explicitly reject the negotiated sentence before accepting his plea submission inexorably bound it to impose the four-year sentence.

## 1.

{¶15} A "recommended" sentence is just as it sounds: "a nonbinding recommendation to the court, which the court is not required to accept or comment on." *State v. Harvey*, 8th Dist. Cuyahoga No. 107168, 2019-Ohio-715, ¶ 7. Conversely, an "agreed" sentence is a plea agreement "in which 'the defendant and the State have agreed to be mutually bound to a specific sentence or a sentence * * * within a prescribed range.' "

8

*State v. Jackson*, 8th Dist. Cuyahoga No. 108364, 2020-Ohio-491, ¶ 13, quoting *Huffman*, 8th Dist. Cuyahoga No. 105805, 2018-Ohio-1192, at ¶ 17. In other words, an agreed sentence contains "terms implying set guarantees." *City of Warren*, 11th Dist. Trumbull No. 97-T-0213, 1999 WL 76756, at *3. Stated another way, the difference between recommended and agreed sentences is that the first purports to "recommend" a particular sentence, whereas the latter purports to stipulate to a particular sentence. However, because many Ohio courts wield the term "agreed sentence" more expansively, often encompassing recommended sentences,[1] we will refer to agreed sentences as "stipulated" sentences in order to avoid confusion.

**{¶16}** As to recommended sentences, it is beyond peradventure that such sentences cannot be binding on the court. If the trial court accepts a plea agreement containing a recommendation, the agreement necessarily acknowledges that the trial court may deviate from the recommendation. *See State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 28 ("[T]rial courts may reject plea agreements and [] are not bound by a jointly recommended sentence."); *State ex rel. Duran v. Kelsey*, 6th Dist. Wood No. WD-04-077, 2004-Ohio-6464, ¶ 4 ("[I]t is well-established that a court is not bound to accept the prosecution's recommended sentence as part of a negotiated plea agreement.").

**{¶17}** " 'However, the law is somewhat less settled in those cases where the trial court appears to indicate that it accepts the negotiated plea agreement *before the court accepts the defendant's plea*, and then deviates from the recommended sentence * * * .' "

---

[1] *See, e.g.*, *State v. Rice*, 1st Dist. Hamilton No. C-140348, 2015-Ohio-5586, ¶ 2 (noting that the trial court sentenced the defendant according to the "agreed sentence," even though the agreement contained both a recommendation and a set guarantee); *State v. Sawyer*, 183 Ohio App.3d 65, 2009-Ohio-3097, 915 N.E.2d 715, ¶ 68 (1st Dist.) ("An agreed sentence is one that has been jointly recommended by the defendant and the state, is imposed by the sentencing court, and is 'authorized by law.' "), *overruled on other grounds, State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 19-20 (using "agreed sentence" to mean a negotiated "recommendation").

(Emphasis sic.) *State v. Asberry*, 173 Ohio App.3d 443, 2007-Ohio-5436, 878 N.E.2d 1082, ¶ 40 (8th Dist.), quoting *City of Warren* at *3. In these scenarios, the defendants may misunderstand the nonbinding nature of recommended sentences and thus walk into their plea unknowingly. Approximately 30 years ago, Judge Gray lamented this scenario:

> [T]he court may listen to the prosecution's recommendation of an unacceptable sentence, accept a plea of guilty based on that recommendation, but then ignore the prosecution's recommendation and yet still hold the defendant to his guilty plea. This smacks of the bait and switch tactics of consumer fraud.

*State v. Cox*, 4th Dist. Ross No. 1626, 1990 WL 178107, *3–4 (Oct. 23, 1990) (Grey, J., dissenting).

{¶18} To remedy this potential unfairness, courts now generally agree that "[t]he analysis in these scenarios turns to due process concerns over whether the accused was put on notice that the trial court might deviate from the recommended sentence." (Emphasis omitted.) *City of Warren*, 11th Dist. Trumbull No. 97-T-0213, 1999 WL 76756, at *3, citing Katz & Giannelli, *Criminal Law*, Section 44.8, at 154-155, (1996); *see also State v. Anderson*, 2d Dist. Montgomery No. 26056, 2014-Ohio-4699, ¶ 13 (same); *Bonnell*, 12th Dist. Clermont No. CA2001-12-094, 2002-Ohio-5882, at ¶ 21 (same). And of course, actual notice requires affording the defendant an opportunity "to change or to withdraw his plea when he received this notice." *City of Warren* at *3. Thus, the trial court "does not err by imposing a sentence greater than 'that forming the inducement for the defendant to plead guilty when the trial court *forewarns* the defendant' " of that possibility. (Emphasis added.) *State ex rel. Duran v. Kelsey*, 106 Ohio St.3d 58, 2005-Ohio-3674, 831 N.E.2d 430, ¶ 6, quoting *State v. Buchanan*, 154 Ohio App.3d 250, 2003-Ohio-4772, 796 N.E.2d 1003, ¶ 13

10

(5th Dist.). And this principle applies whether the recommend sentence goes to duration or other aspects, such as concurrent versus consecutive sentences. *See State v. Dunbar*, 8th Dist. Cuyahoga No. 87317, 2007-Ohio-3261, ¶ 138 (applying the same reasoning to consecutive/concurrent sentencing recommendation); *Allgood*, 9th Dist. Lorain Nos. 90CA004903, 90CA004905 and 90CA004907, 1991 WL 116269, at *2 (same). Regardless of the context, the dispositive principle remains the same: the touchstone for determining constitutional fairness in plea submissions is notice.

{¶19} If the trial court fails to provide adequate notice, the remedy is to resentence the defendant in accordance with the recommendation or allow the defendant to withdraw his plea. *See State v. Williams*, 8th Dist. Cuyahoga No. 105025, 2017-Ohio-2662, ¶ 5 ("The trial court erred by failing to either forewarn [the defendant] of a potentially longer prison term or to give him the opportunity to withdraw his guilty plea at the sentencing hearing."); *Allgood* at *3 ("When the court decided to change its position on the plea agreement, it should have clearly advised [the defendant] of its intentions, and allowed [the defendant] to reconsider his plea."); *Huffman*, 8th Dist. Cuyahoga No. 105805, 2018-Ohio-1192, at ¶ 22 ("Accordingly, the proper remedy is to remand this case to the trial court to resentence appellant under the plea agreement or to allow appellant to withdraw his guilty plea.").

{¶20} Finally, in regards to stipulated (agreed) sentences, Mr. Elliott claims that the Eighth District adopted an additional rule: when a plea agreement contains a stipulated sentence, the trial court must accept or reject the stipulated sentence explicitly. *See Id.* at ¶ 20 ("Although the trial judge is free to accept or reject [the agreed sentence], it is incumbent upon the court to do so expressly."). But that doesn't strike us as a novel conclusion. It is rather a specific application of the principles we delineated above.

{¶21} If the court accepts a stipulated sentence, it agrees to be bound by that stipulation.[2] *See, e.g., State v. Sage*, 2d Dist. Montgomery No. 21097, 2007-Ohio-442, ¶ 10 ("As part of the plea agreement, the State agreed to not seek a sentence longer than life plus eight years, and the trial court accepted this stipulation."); *Patrick*, 163 Ohio App.3d 666, 2005-Ohio-5332, 839 N.E.2d 987, at ¶ 26 ("While it is true that a trial court may accept or reject an agreed-upon sentence, if a defendant and his attorney reached an agreement with the prosecutor and the trial court then accepted this agreement on the record, to impose anything other than the agreed[-]upon sentence renders it void or voidable."); *Rice*, 1st Dist. Hamilton No. C-140348, 2015-Ohio-5586, at ¶ 2 (noting that the trial court accepted both a recommended sentence and a stipulation for community control); *compare State v. Sykes*, 2018-Ohio-4774, 124 N.E.3d 406, ¶ 28 (8th Dist.) (holding the defendant could not contest the "agreed" sentence because the trial court had accepted the agreement).

2.

{¶22} Let's now turn to the agreement at hand. We note at the outset that the agreement in this case admits of some ambiguity. Stamped "AGREED GUILTY PLEA," it contains the caption: "ENTERING PLEA OF GUILTY TO AN AGREED SENTENCE." While that calls to mind the "stipulated" plea that we described above, the first paragraph somewhat undermines that conclusion: "I understand and acknowledge that I have agreed with the prosecution on potential sentence to wit: [four years' imprisonment]." Notwithstanding this paragraph, a defendant could perhaps be forgiven for thinking that

---

[2] Sometimes new information comes to light between the plea and sentencing that might cause the trial court to change its position. But in such a case, due process also requires giving the defendant the opportunity to withdraw his plea. *See State v. Bonnell*, 12th Dist. Clermont No. CA2001-12-094, 2002-Ohio-5882, at ¶ 23 ("Either the trial court must sentence appellant in accordance with the plea agreement, or if it determines such a sentence is no longer appropriate, it must allow appellant the opportunity to withdraw his guilty plea.").

such an agreement included a stipulated sentence of four years. But any lingering confusion was dispelled by the trial court's discussion with Mr. Elliott:

THE COURT: Further, it's my understanding that you, apparently, your attorney, the state, the officer involved in this case are making a recommendation to the Court that you receive a sentence of four years in the Ohio Department of corrections. Right?

MR. ELLIOTT: Yes, ma'am.

THE COURT: And there's no promise. Did anybody promise you that's what you are going to get or guarantee that's what you're going to get?

MR. ELLIOTT: No, he came to an agreement with my lawyer.

THE COURT: And what does that mean?

* * * *

MR. ELLIOTT: He came to an agreement I plead, I don't know if anything was promised to me.

THE COURT: That's what I'm asking you. That's why I want to know. Was anything promised to you or guaranteed to you that you are going to get a four-year sentence?

MR. ELLIOTT: No Ma'am.

THE COURT: Okay. Because there is no promise or guarantee, that's an agreement that you all made, but the Court, ultimately decides the sentence. And I don't have to give you four, and I never said I was going to give you four. Okay. So I could give you more. I could give you less. Knowing that there's no promise, no guarantee that you're going to get four, do you still want to go forward with this plea?

MR. ELLIOTT: Yes, Ma'am.

\* \* \* \*

THE COURT: Now, these sentences could all run one right after the other. And if that was the case you could get from 27 months in prison, minimum, up to nine years in prison. Do you understand that?

MR. ELLIOTT: Yes.

\* \* \* \*

THE COURT: Do you wish to voluntarily waive, give up your rights, not have a jury or me, as the Court, decide if you are guilty or not at trial. You don't want a trial at all. Instead, what you want to do is enter this guilty plea; is that correct?

MR. ELLIOTT: Yes, Ma'am.

{¶23} As the record confirms, even if Mr. Elliott reasonably believed the agreement contained a stipulated sentence, the trial court expressly rejected any such stipulation. The court could not have been clearer that it would not be bound by the negotiated sentence. And to buttress the point, the trial court explained that it retained the discretion to sentence Mr. Elliott up to nine years. Put another way, the trial court clarified that it was only accepting the plea agreement as containing a sentencing recommendation, not a stipulation. Finally, and most importantly, the court thereafter provided Mr. Elliott the opportunity to withdraw his guilty plea, rendering the notice meaningful. In light of these measures, we cannot conclude that the trial court went astray here.

{¶24} Confronted by the transcript, Mr. Elliott seeks to blame his attorney for assuring him that the trial court would impose the negotiated sentence. But he points to no evidence in the record to support this assertion, preventing us from considering the matter

14

further. *See State v. Ishmail*, 54 Ohio St.2d 402, 377 N.E.2d 500 (1978), paragraph one of the syllabus ("A reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter."). We therefore overrule this assignment of error.

III.

{¶25} In his second assignment of error, Mr. Elliott claims ineffective assistance of counsel, painting his attorney's assurance that the trial court would follow the negotiated sentence as textbook ineffective assistance. But as already noted, Mr. Elliott fails to substantiate this conclusion with anything in the record. *See State v. Nawman*, 2d Dist. Clark No. 2016-CA-43, 2017-Ohio-7344, ¶ 14 (rejecting an ineffective assistance claim for misleading advice on whether the trial court would deviate from the negotiated sentence because "other than his bare assertion, [the defendant] has produced no evidence to substantiate his claim that his counsel failed in that regard."). Thus, this appeal is not the correct forum for Mr. Elliott to fashion this argument. "[M]atters outside the record that allegedly corrupted the defendant's choice to enter a guilty or no contest plea * * *, such as ineffective assistance * * *, are proper grounds for post-conviction relief pursuant to R.C. 2953.21 * * * ." *State v. Graham*, 2d Dist. Montgomery No. 27033, 2017-Ohio-4093, ¶ 22. Mr. Elliott's second assignment of error is also overruled.

\* \* \*

{¶26} In light of the foregoing analysis, we overrule both of Mr. Elliott's assignments of error and affirm the judgment of the trial court.

Judgment affirmed.

**CROUSE** and **WINKLER**, **JJ.**, concur.

15

Please note:

      The court has recorded its entry on the date of the release of this opinion